THE WESTERN UNION TELEGRAPH Co. *v.* NELSON.

(Decided December 24, 1934.)

*Mr. Francis R. Stark* and *Messrs. Ireton & Schoenle,* for plaintiff in error.

*Messrs. Shook, Davies, Hoover & Beall,* for defendant in error.

Ross, J.   This cause comes into this court on error to the Court of Common Pleas of Hamilton county. The judgment of that court certified to the Industrial

Commission a verdict of a jury in favor of the right of the plaintiff, Jake Nelson, to participate in the State Insurance Fund as against a self-insurer, The Western Union Telegraph Company, plaintiff in error.

It is the contention of the plaintiff in error that no application for compensation was ever made to plaintiff in error by the claimant prior to the filing of the instant litigation. Section 1465-72a, General Code, is as follows:

"In all cases of injury or death, claims for compensation shall be forever barred, unless, within two years after the injury or death, application shall have been made to the industrial commission of Ohio or to the employer in the event such employer has elected to pay compensation direct."

An examination of the record discloses the following:

The plaintiff was a member of a crew whose duty it was among other things to place poles for the telegraph company along its right of way. While engaged in such employment a pole slipped, causing the weight to shift toward the plaintiff, who was supporting it with a long pole. His wrist was bent backward and injured. The plaintiff was tubercular, and by reason of the injury so received accelerating the cause of the disease it became necessary to amputate his arm a little below the elbow.

The plaintiff, however, continued to work for some time after the injury, but was finally compelled to quit his employment, owing to his inability to carry on his work with his injured arm. A few days after he had ceased his work, he called upon his foreman and asked him for his pay. It was claimed that it was at this time he made application for compensation. The claimant's brother and fellow-workman testified as to a conversation between the claimant and the foreman of plaintiff in error, as follows:

"18. Well, now, did you hear the conversation, any conversation between him and Mr. Stumbaugh, the foreman, at any time after the accident? A. I did, after he was laid off, when he came back out there and I was with him in the room there. He came in and asked Mr. Stumbaugh would he make a state case out of it, and he said no, he did not want to turn in an accident report.

"19. Did you hear that conversation? A. Yes.

"20. Where did that occur? A. Elm Hotel, Norwood.

"21. And you used the language that Mr. Nelson used at that time; or recall any words he said? A. No, I can remember me asking him is all. * * *

"24. Was there anything said by Mr. Stumbaugh at that time, when he asked him to make a state case out of it, about the exact dates when this occurred? A. Yes, sir, Mr. Stumbaugh said he did not know the exact date was the reason he did not want to put in for a state case.

"23. Was Mr. Stumbaugh present when this pole fell, injuring Mr. Nelson's arm at the wrist? A. Yes, sir.

"26. Did you hear any other conversation between Mr. Stumbaugh and Mr. Nelson regarding this injury? A. No, sir, I did not."

The claimant testified to the following:

"25. Well, now, what happened after that with reference to your hand? Did you continue to work? A. Well, I continued working a few days and the hand started going on the bum, getting worse. Finally it just got so I could not use it. I was working with one hand, and Mr. Stumbaugh gave me soft work like going down the track and doing some things to prevent trouble on the lines.

"26. And did you ever talk to him afterwards about the injury? A. Well, I asked Mr. Stumbaugh for com-

pensation after he discharged me. I came back, I was discharged on the 10th and the 15th was pay day, so I had some pay coming and I went back to the hotel where Mr. Stumbaugh was paying off. He said 'What are you doing here?' I said 'I got some little pay and I want to try to get a little out of this case, try to make it a state case out of it.' Mr. Stumbaugh asked me if I had an exact date of the injury and I told him no. He says 'I don't want to report on the accident without an exact date in reporting the accident to the company.' So I just let it drop.

"27. Did he offer you any papers to sign? A. No, sir. He had papers there intended to fill it out, some kind of sickness I believe it was that he did fill in—something of that kind.

"28. He put that in? A. I do not know exactly except that it was some kind of sickness.

"29. Did you tell him to put that in? A. Well, he just said 'you report that and you will get back to work.' He says 'if you report that you will get back to work.' I just did not know what he meant by it, I guess I was dumb and Mr. Stumbaugh will admit the fact I asked him, and he knows he discharged me.

"30. Well, how long after the discharge was it, that is when he temporarily laid you off, how long was it after that when you asked him for compensation, the same time or later? A. No, he discharged me on the 10th. He did not fill out no papers. Just told me to get my hand fixed. On the 15th I came back and he filled out this discharge paper as sickness, on the 15th, that was pay day when I was back collecting my money.

"31. What did you do after that, after he refused to help you get any compensation, what did you do? A. Well, I had a little money, couple of hundred dollars, and I went down to Mr. Behrmann. Spent all my money there. Did not have no more money. Then I went over to Bell Street Hospital, went there for two

treatments. They would not care for me, but they give me a permit to go to the General. * * *

"59. What was the conversation you had with Mr. Stumbaugh, the foreman, at the Elm Hotel in Norwood, shortly after the accident, the night you had been laid off? A. Well, I went back to get my pay. He said, 'What are you doing around here?' I said 'I am back to make a state case out of my injury to the wrist.' Mr. Stumbaugh, he asked me if I had the exact dates and I told him 'No.' He said 'Well, he could not turn in an accident report without the exact date of the injury.'

"60. Did you have a talk with him about this injury before that time? A. Sure I talked to him about it before I was discharged, when he told me I had better get that wrist fixed up.

"61. What did he say to you when he discharged you in September, 1928, September 19th, I think it was?"

Mr. Ireton: "Object to that."

Referee: "Objection overruled."

"A. Why, Mr. Stumbaugh told me he would not make out an accident report. He would report some kind of sickness so I would be able to get back on the job. Said if I reported an accident like that I would not have much chance of getting back."

The foreman testified:

"22. Do you remember the accident when the pole they were erecting there on that job fell? A. I remember the pole falling up there, yes, sir.

"23. Was that a pole upon which Mr. Nelson was working at that time? A. Yes.

"24. Did you make out a written report to the Telegraph Company when you dismissed Mr. Nelson? A. Not that I can remember.

"25. Is it or is it not a fact that Mr. Nelson asked you as the foreman of the Western Union Telegraph

Company, after he was dismissed, to make a state case for his injuries and for the purpose of getting compensation for the same? Do you remember that? A. No, I do not.

"26. In your experience as foreman of that crew, did you ever have any other accident out there? A. Oh, yes.

"27. Did you receive a report of the other accidents and report for compensation for the men that were injured? A. You are supposed to fill out papers for them, I think.

"28. Did you ever offer a paper to Mr. Nelson to fill out on a claim for compensation by reason of those injuries? A. No, sir.

"29. Did he ever ask you to get papers? A. No, that I can remember.

"30. Did you at that time or about that time know or learn of his accident? A. No accident, no.

"31. Did you or did you not report to the company the accident when the pole fell that day? A. No, do not recall. * * *

"68. What was your occasion to be at the hotel in Norwood at that time? To take care of the pay roll? A. Yes, sir, paying off my men.

"69. You did that at the hotel in Norwood? A. Yes, sir.

"70. And that's when you had the conversation about his injury, when he said he was injured, is that right? A. Yes, sir.

"71. Are you sure he did not ask you for compensation at that time? A. I can't remember if I did.

"72. But do you recall, however, that he mentioned the injury at that time? Is that right? A. Yes, he mentioned the injury at that time because his arm was wrapped up.

Mr. Karch: "That's all."

Re-cross Examination.

Examination by Mr. White:

"73. Mr. Stumbaugh, you don't recall how long it was after he laid off on account of the sickness that he had this conversation with you about the accident? A. About four or five weeks as near as I can remember. See that's been a long time ago and a fellow can't remember all them things."

From the record it is apparent that the foreman paid the claimant and his fellow-employees, and had the right to discharge them, and there is some indication that this foreman could also employ them. He was required to make reports to the company covering injuries to men in his crew. The plaintiff in error has a large organization, extending over a vast territory. The foreman of the crew was the representative of the company, with whom the claimant was expected to deal. As far as the claimant was concerned, he was the company, and it is obvious that it was intended he should be so. It has been repeatedly decided that an oral application is sufficient. *W. S. Tyler Co.* v. *Rebic,* 118 Ohio St., 522, 161 N. E., 790.

Did the conversation with the foreman, related hereinbefore, contain an application? We think no other conclusion can be reached than that the claimant made an application to the foreman, and that it was understood to be such. The fact that after he had communicated his desire for compensation the foreman put apparently insuperable obstacles in his way, causing the claimant to say he would "drop it", cannot be offered as evidence that he had not made an application, or that, having made it, the claimant abandoned same.

Our conclusion is that an application was made in due time, and that the provisions of Section 1465-72a, General Code, do not prevent the consideration of the claim of the defendant in error.

It is also claimed that there was no proof of injury in the course of employment, such as, by reason thereof, would warrant participation. The record contains ample evidence to justify the verdict upon this consideration.

We conclude that the judgment should be affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.